1  Christopher M. Brainard, Esq. (applicant *pro hac vice* has complied LR IA 10-2)
   468 North Camden Drive, 2nd Floor
2  Beverly Hills, California 90210
3  Telephone: (310) 266-4115   Facsimile: (866) 222-1870
   Attorney for Plaintiff
4

5  Adam J. Breeden (NSBN 8768)
   BREEDEN & HERBE
6  139 E. Warm Springs, Suite 115
7  Las Vegas, NV 89119
   (702)966-5690
8  Local Counsel for Plaintiff
9
10
11
12            UNITED STATES DISTRICT COURT
13                 DISTRICT OF NEVADA

14 | NIGHTS AT VEGAS, INC., a Nevada       ) CASE NO.:
15 | Corporation,                          )
                                           )
16 |                                       ) COMPLAINT
   | Plaintiff,                            )
17 |                                       ) 1. DECLARATORY RELIEF FOR
18 | vs.                                   )    NON-INFRINGEMENT OF
                                           )    TRADEMARK
19 | DONALD J. TRUMP, TRUMP RUFFIN         ) 2. ANTI-TRUST: MONOPOLISTIC
   | LLC, TRUMP RUFFIN TOWER I LLC,        )    PRACTICES, INFLUENCE &
20 | and Does 1-10 inclusive,              )    EXCLUSIVE DEALING
                                           )    AGREEMENTS
21 |                                       )    (15 U.S.C. § 1 et. seq. 15 U.S.C. §15)
22 | Defendants.                           ) 3. FALSE PROMOTION
                                           )    (15 U.S.C. § 1125(a)(1)(B))
23 |                                       ) 4. UNFAIR COMPETITION
24 |                                       )
                                           ) MONETARY, DECLARATORY, &
25 |                                       ) INJUNCTIVE RELIEF; JURY TRIAL
26 |                                       )
                                           ) DAMAGES SOUGHT IN EXCESS OF
27 |                                       ) $1 BILLION
28 |                                       )

COMPLAINT

## I. JURISDICTION AND VENUE

1. Plaintiff brings this action seeking a declaration of rights with respect to federal trademark laws and this court has jurisdiction pursuant to 15 U.S.C. § 1121(a). Plaintiff also brings this action because of defendants' violations of the Shermin Act (15 U.S.C. § 1 et. seq.) and therefore this court has jurisdiction pursuant to the Clayton Act (15 U.S.C. § 15 et. seq.) Plaintiff also brings this action pursuant to 15 U.S.C. § 1125. Thus, there are federal questions presented and the court has jurisdiction over this action under 28 U.S.C. § 1331 and 1338.

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts.

3. Venue is proper in the District of Nevada under 28 U.S.C. §1391(b) and (c) because the events or omissions giving rise to these claims occurred in this district and the defendants conduct business in this district.

4. Defendants have sufficient contacts with this district generally and, in particular, with the events alleged in this complaint, so that each defendant is subject to the court's exercise of personal jurisdiction over them.

## II. THE PARTIES

5. Plaintiff Nights at Vegas, Inc. is a Nevada corporation duly licensed to do business as a real estate management company in the State of Nevada ("NAV"). NAV is licensed by the Department of Real Estate for Nevada and is in the business of managing and renting condominiums in condominium hotels.

6. Defendant Donald J. Trump is an individual who owns an interest in entities including defendants Trump Ruffin LLC, and Trump Ruffin Tower I LLC. Trump. Donald J Trump has registered and is the actual owner of certain trademarks at issue herein including "Trump," "Trump International," and "Trump International Hotel

& Tower." On information and belief these defendants control the hotel operations at the condominium hotel publicly known as the "Trump International Hotel & Tower, Las Vegas."

7. Plaintiffs allege additional Defendants Does 1-10 as individuals and entities yet unidentified and Plaintiffs will amend this Complaint with their names and identifying information when discovered.

8. Plaintiffs are informed and believe that each Defendant was the agent, employee, partner, co-conspirator, or other authorized representative of the other, and, in committing the acts and omissions alleged hereinafter, were acting within the scope of their agency, employment, partnership, conspiracy, or other authorized representation. Whenever and wherever reference is made in this complaint to any acts of Defendants, such allegations and references shall also be deemed to mean the acts of each Defendant acting individually, jointly, or severally.

9. Plaintiffs are informed and believe that each Defendant entered into a conspiracy and agreement with the other Defendants or subsequently joined said conspiracy and ratified the prior acts and conduct of the Defendants who had previously entered into said conspiracy. Plaintiffs are currently unaware of when each Defendant joined said conspiracy but, on information and belief, allege that all Defendants have knowingly, maliciously, and willfully entered into said conspiracy which continues to this day. The purposes of said ongoing conspiracy includes, but is not limited to, the creation, maintenance, and implementation of practices designed to limit the ability of Plaintiff to service, market, and rent condominium units at the Trump International Hotel & Tower – Las Vegas.

10. The dispute is ripe for adjudication at this time because Defendants claim to exclusive control the major marketing channels on the internet (including Expedia, Travelocity, and Orbitz). On information and belief, Defendants are in exclusive agreements with most major internet outlets such that Plaintiff is foreclosed from being able to list and market condominium units in the Trump International Hotel

& Tower – Las Vegas.  Further, Plaintiff's use of the Trump trademarks for use in its marketing campaigns in at issue because the Defendants have refuse to provide a license or allow any use whatsoever absent threat of immediate lawsuit against Plaintiff as well as its shareholders, directors, and officers, for damages, treble damages, statutory fees, attorney fees, and costs.

11. This matter affects interstate commerce because the consumers and transient guests for the Trump International Hotel and Tower, Las Vegas, are targeted via the internet and come from around the world.

## INDEX OF EXHIBITS

12. Attached as Exhibit 1, is a true and correct copy of a letter from Defendants' attorney Demanding that NAV "cease and desist" using any TRUMP trademarks.  Further, the letter specifically states that Defendants have a "contractual relationship" with internet outlets such as Expedia, Travelocity, and Orbitz, which are exclusive.

## NATURE OF THE CASE

13. Plaintiff is the only major competitor to Defendants in providing the service of booking transient guests in the residential units in the Trump International Hotel & Tower – i.e., without Plaintiff in the market, Defendants have a monopoly. Plaintiff typically offers a price split which is better than that offered by Defendants in that Defendants offer a 50/50 split, while Plaintiff offers an 80/20 split on net income in favor of the unit owners.

14. Plaintiff needs to be able to use the Trump trademarks to satisfy its obligation to the unit owners to market the units it is charged with managing since the marks are attached to the condominium hotel, serve as a location reference, are part of the public identity of the buildings, is part of the brand associated with the

condominium units, and because the marks truthfully describe the nature of the luxury suites being offered to the public for transient rental.

15. Further, Plaintiff needs to be able to contract on a level playing ground with the major listing engines so that it is not foreclosed from marketing the units it manages via consumers using the internet. <u>Defendants have openly stated that they have secured exclusive contractual relations with various parties such that they are the only party that can list units for transient rental on most of the major listing services including **Expedia, Travelocity, and Orbitz**. On information and belief, Expedia Travelocity, and Orbitz are the three largest online travel agencies and control the majority of the online market.</u>

16. On information and belief, Defendants have and are securing other exclusive agreements with the internet listing services and travel agencies.

17. Consumers are hurt by these actions by Defendants in that they are not able to find the least expensive rooms of equal quality in the market place. Further, the owners of the residential units are harmed because they will be forced to pay an unfair 50/50 split of income on the units when competition would allow them to enjoy an 80/20 split.

18. Defendants have created another Trump entity (name yet unknown) to manage its rental program which provides essentially the same service as Plaintiff. Defendants have integrated the booking services of their entity while refusing to agree to protocols and administrative procedures with Plaintiff so that Plaintiff can arrange "check-in" and "check-out" of transient guests as well as cleaning of the units Plaintiff manages. Further, the Defendants have instituted various fees they intend to charge Plaintiff which they will not charge their own Trump entity rental program, thus, taking unearned benefit and driving Plaintiffs costs up. These actions are in violation of the CC&Rs for the condominium hotel as well as Nevada Revised Statutes 116B, are an attempt to create and maintain a monopoly, and are an unreasonable restraint on trade and competition.

19. The entire hotel staff and people answering the phones at the Trump International Hotel & Tower state when asked about Plaintiff that Plaintiff will not be allowed to market the units in the building and will not be allowed to rent units. Brokers and agents who have an obligation to advise their clients of choices are threatened with loss of commissions and are intimidated from even suggesting the alternative that Plaintiff provides. Defendants have threatened to impose arbitrary and pernicious fees for Plaintiff's involvement. Absent the actions as described in this Complaint, <u>Plaintiff alleges that at least 50% of the unit owners in the building would engage Plaintiff's services, due to the fact that Plaintiff provides a far more profitable agreement at an 80/20 split versus Defendant's 50/50 split.</u> The amount of lost revenue to Plaintiff for these many hundreds of clients which have no other alternative than to sign with Defendants is believed to be approximately $250,000,000 per year. Further, due to the difficulty in switching property management companies, mandatory notice requirements, and mandatory term lengths, Defendants will secure these streams of revenue for an average of 4 years – i.e., <u>Plaintiff seeks in excess of $1 billion in damages.</u>

## FIRST CAUSE OF ACTION FOR DECLATION OF NON-INFRINGEMENT OF TRADEMARK

**(Against all Defendants)**

20. Plaintiff realleges and incorporates paragraphs 1-19.

21. Pursuant to "Condominium Hotel Act," the legal description of the units is set forth at NRS 116B.325, titled "Description of Units." Therein, NRS 116B.325, states what is a legally sufficient description of a residential unit as follows:

> "A description of the residential units and the hotel unit which sets forth the <u>name of the condominium hotel</u>, the file number and book or other information to show where the declaration is recorded, the county in which the condominium hotel is located and the identifying number of the units is a

1  legally sufficient description of those units and all rights, obligations and
2  interests appurtenant to those units which were created by the declaration or
3  bylaws." [Emphasis added.]

4  22.  The buildings which contain the residential condominium units which Plaintiff manages have the word "TRUMP" in lights on each side of the buildings and on information and believe this is to provide a public identity to the buildings and for location reference.

### The Need for an Immediate Declaration of Rights and Liabilities

23.  Plaintiff as a Nevada Department of Real Estate licensed property management company has an <u>immediate obligation</u> to properly market the units it has been contracted with to manage, but cannot because Defendants have foreclosed many marketing channels through exclusive agreements and due to the fact that Defendants refuse to provide a license or otherwise provide any permission to use the trademarks "Trump," "Trump International," or "Trump International Hotel & Tower." In fact, each and every instance that Plaintiff has attempted to use any reference to the building, its services, or the units it has an obligation to market, which includes the word "Trump," Defendants have demanded that Plaintiff cease and desist such use under threat of lawsuit against Plaintiff, as well as its <u>officers and directors</u>, seeking damages, treble damages, attorney fees, and costs, without providing any basis for piercing the corporate structure and for the purpose of intimidation via attack on the individuals when the actions are of a legal fully licensed and honest entity.

24.  <u>Plaintiff states on its website via disclaimer that it is independent of any condominium hotel as follows:</u>

> "Disclaimer: Nights at Vegas, Inc. is an independent property management company which acts directly with and on behalf of the owners of units in condominium hotels, so that it may act

independently to bring you better service and rates. None of its partners, agents, employees, or the company itself, are directly affiliated with any one hotel, casino, or condominium hotel."

25. Plaintiff does not seek to use the trademarks to create confusion or to imply endorsement or sponsorship of its company or activities, but rather seeks to honestly fulfill its obligation to list transient rentals on the secondary market honestly and to honestly convey to the public the service and amenities they are purchasing – luxury suites in the Trump International Hotel & Tower, Las Vegas.

26. In essence, the condominiums are a branded service and product which Plaintiff believes has a right to truthfully describe in terms of location, public identity, and brand, such that the use of the trademarks is necessary for an honest description. See <u>Dow Jones & Co. v. Int'l Sec. Exch., Inc.</u> (2006 CA2 NY) 451 F.3d 295. As such, Plaintiff seeks an immediate Declaration of rights and liabilities due to the fact that there is a present controversy which needs to be resolved. Plaintiff seeks a declaration that the following trademarks may be used so long as there is no additional statement of any kind indicating that Defendants endorse or sponsor Plaintiff's activities:

   a. "Trump" when used in the context of marketing hotel rooms, luxury hotel rooms, luxury suites, rooms, suites, rental, or transient rental for units in the Trump International Hotel & Tower in Las Vegas;

   b. "Trump International" when used in the context of marketing hotel rooms, luxury hotel rooms, luxury suites, rooms, suites, rental, or transient rental for units in the Trump International Hotel & Tower in Las Vegas;

   c. "Trump International Hotel & Tower," when used in the context of marketing hotel rooms, luxury hotel rooms, luxury suites, rooms, suites, rental, or transient rental for units in the Trump International Hotel & Tower in Las Vegas.

### Declaratory Relief is Warranted

27. Based on the preceding allegations, there exists between the parties a substantial controversy of immediacy and reality to warrant declaratory relief. There is no bad faith intent by Plaintiff nor need for Defendants to seek to pursue Plaintiffs individual officers and directors except for purposes of intimidation, malice prosecution, and oppression. Plaintiff believes the only fair and efficient means of resolution is through this action and the mercy of the court.

28. The court should exercise its discretion, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, to issue a declaratory judgment in this action because Plaintiff is informed and believe, and based on such information and belief allege that Defendants' motivation in demanding that Plaintiff not use the trademarks is not to protect the trademarks or to prevent confusion, but instead to unreasonably restrain trade, prevent the owners of the units from having viable alternatives to rent and market their units, and to create a monopoly.

29. Thus the court should grant Plaintiff the judgment requested on the grounds of fair use, implied license to the unit owners and Plaintiff as their agent, equitable easement, equitable license, branding in secondary market, accurate description of a branded product, location reference, and legal description. See Dow Jones & Co. v. Int'l Sec. Exch., Inc. (2006 CA2 NY) 451 F.3d 295; and Polymer Tech. Corp. v. Mimran (2nd Cir. 1992) 975 F.2d 58, 61-62 ("As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized"); and also Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731 (1924) ("When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo.").

## SECOND CAUSE OF ACTION FOR ANTI-TRUST: MONOPOLISITC PRACTICES, RESTRAINTS ON TRADE, AND EXCLUSIVE AGREEMENTS

(Against all Defendants)

30. Plaintiff realleges and incorporates paragraphs 1 – 29.

31. There is a substantial effect on interstate commerce due to the fact that the Trump International Hotel & Tower, Las Vegas, is specifically to be used for transient rentals to international clientele. The word "international" is used as part of the name of the hotel because patrons from all over the world and the U.S. come to Las Vegas and stay in its 5 star hotels.

32. <u>Exclusive Dealing</u>. On information and belief, Defendants have entered into exclusive dealing agreements with internet companies to control the marketing channels on the internet which are necessary to effectively list and rent units in the Trump International Hotel & Tower, Las Vegas. See Exhibit 1. These agreements are an attempt to restrain trade and foreclose the only real competitor, Plaintiff, from being able to list and rent units at the condominium hotel.

33. <u>Suppression of Competition via Improper Policing of Trademark and Copyrights</u>. Defendants refuse to allow the valid use of their trademarks for honest marketing of condominium units within the condo hotel they have named with their trademarks – i.e., Trump International Hotel & Tower. By threatening such litigation and attempting to limit the ability of Plaintiff, the only major competitor, from being able to honestly describe the units it intends to rent, Defendants have suppressed competition.

34. <u>Refusal to Deal</u>. Defendants have refused to provide protocol to Plaintiff for "check-in," "check-out," and other attendant services when they in fact have an obligation to the unit owners and Plaintiff as the unit owners' designated property manager and agent to do so pursuant to the NRS 116B and the CC&Rs. This prevents Plaintiff as the only major competitor from being able to provide the service of renting the units and facilitates Defendants attempted monopoly.

35. <u>Improper Information, Threats, and Intimidation</u>. Defendants and their agents have and are providing inaccurate information to unit owners when they inquire about Plaintiff's services. Defendants advise unit owners that Plaintiff cannot

market the units, will not be allowed to make bookings, and will not be allowed to rent the units. Further, Real estate brokers and agents who have a duty to be honest and advise unit owners of Plaintiff's services are subject to intimidation and threats that they will lose their commissions related to pending transactions for even mentioning the name of Plaintiff to prospective purchasers or current owners of units at the Trump International Hotel & Tower. By improperly providing false information and by using financial leverage against real estate brokers and agents, when these brokers and agents would otherwise honor their duties to advise unit owners of their alternatives, Defendants are improperly suppressing information, suppressing competition, and attempting to create a monopoly.

36. The Defendants, through collaboration, cooperation and conspiracy, have entered into a plan and scheme, the purpose of which is to completely control and monopolize the marketing and rental income from the residential units in the condo hotel.

37. <u>Injunction</u>. Plaintiff seeks all injunctive relief necessary, including preliminary injunction, and TRO, effectively restraining Defendants from their unlawful interferences with commerce. If such an injunction is granted, Defendants will suffer no harm, while if the injunction is not granted, Plaintiff will be unable to provide service to the units it manages such that the unit owners will be harmed in loss of income, worldwide consumers will be hurt in loss of the opportunity to secure the lowest price for transient rentals at the Trump International Hotel & Tower, and Plaintiff will be harmed by losing substantial income in not being able to book the rooms and make its commission.

38. Damages. Plaintiff believes and states according to proof that it will lose income from hundreds of units in the building as a result at a present value of $1 Billion, according to proof. Plaintiff seeks damages, treble damages, attorney fees, and costs.

39. Unless enjoined and restrained, Defendants will secure a complete monopoly of the world wide marketing and rental of units in the condo hotel as well as the income to be derived from the individually owned units in the condo hotel.

40. Plaintiff seeks, treble damages ($3 Billion), attorney fees, and costs for suit for these violations.

### THIRD CAUSE OF ACTION FOR FALSE PROMOTION

(15 U.S.C. § 1125(a)(1)(B))

(Against all Defendants)

41. Plaintiff realleges and incorporates by reference paragraphs 1-40.

42. Defendants premeditated and intended to engage in suppression of competition and to secure a monopoly from the beginning. In their promotional materials in selling the units, Defendants included in the "Public Offering" and in the CC&R's the following misleading statements about any competitor rental programs like Plaintiff's. These statements are in caps and in bold lettering and every unit owner was provided copy:

> "...THAT ANY RENTAL PROGRAM THAT MAY BECOME AVAILABLE IN WHICH A RESIDENTIAL UNIT OWNER MIGHT DESIRE TO PARTICIPATE WILL MOST LIKELY PLACE SEVERE RESTRICTIONS ON A RESIDENTIAL OWNER'S RIGHTS TO USE SAID OWNER'S UNIT, INCLUDING IMPOSING BLACKOUT PERIODS OR OTHER DATE RESTRICTIONS ON USE OF THE RESIDENTIAL UNIT THAT ARE IN ADDITION TO THE RESTRICTIONS AND REQUIREMENTS IMPOSED BY THIS DECLARATION."

43. Plaintiff has been harmed by this misleading statement because unit owners believe after reading this statement that any program other than Defendants'

existing program will "most likely" to impose "severe restrictions," "blackouts," and "date restrictions." Plaintiff's program does not do any of these things.

44. Defendants should be enjoined from making further statements of this nature and should be required now, <u>while they have the power to amend the CC&Rs</u>, to remove this language which serves no purpose but to mislead.

45. Injunction, preliminary injunction, and/or TRO will not harm Defendants in any way, while granting such an injunction will benefit Plaintiff by preventing confusion amongst residential unit owners as to the terms and conditions offered by Plaintiff.

46. Plaintiff alleges on information and belief, and on such information and belief and according to proof alleges that hundreds of unit owners have not engaged Plaintiff based on this language and tactics by Defendants and that the total amount of damages in lost revenue to Plaintiff over the next 4 years will be $1 Billion.

47. Plaintiff seeks, damages, treble damages ($3 Billion), attorney fees, and costs of suit.

## FOURTH CAUSE OF ACTION FOR UNFAIR COMPETITION
### (Against all Defendants)

48. Plaintiff realleges and incorporates by reference paragraphs 1-45.
49. Defendants' actions as stated herein constitute unfair competition.
50. Plaintiff seeks all damages, treble damages, attorney fees, costs of suit, injunction, and declaratory relief.

## CLAIM FOR RELIEF

Plaintiff prays this Court enter judgment as follows:

1. Declare that Plaintiff may use the trademarks "Trump," "Trump International," and "Trump International Hotel & Tower" for marketing units at the condo hotel located in Las Vegas;

2. That Defendants be enjoined from engaging in monopolistic and anti-competitive activities including exclusive dealings, suppression of competition, and refusing to deal;

3. Attorney fees and costs of suit;

4. Award compensatory damages to Plaintiff in the amount of $1 Billion and according to proof, Plaintiff also seeks treble of said damages ($3 Billion).

5. Such further relief as the Court deems proper.

Faithfully,

Dated: January 25, 2008

_____
Christopher M. Brainard, Esq.
Attorney for Plaintiff
(Applicant *Pro Hac Vice*
has complied LR IA 10-2)

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial.

Dated: January 25, 2008

Faithfully,

Christopher M. Brainard, Esq.
Attorney for Plaintiffs
(applicant *pro hac vice*)